Case number 19-1437, John Wootrn v. Pat Warren. Oral argument not to exceed 15 minutes per side. Ms. Mazur for the appellant. Good morning, and may it please the court. I'm Laura Mazur on behalf of petitioner John Wootrn, and I would like to reserve three minutes for rebuttal, please. Your Honors, we have many points in our brief, all of which merit your consideration. Given the time constraints, it's unlikely that I'll address them all. We would note, however, that the number of arguments and sub-arguments raised speaks to the number of errors committed by the State Court. As you know, Wootrn has raised two claims, and I'd like to touch upon components of both. I'll begin with Wootrn's insufficiency claim before proceeding to the double jeopardy issue. The question presented today is not whether the prosecution disproved Wootrn's self-defense claim beyond reasonable doubt. Although that is the question the district court answered, based on its erroneous belief that Wootrn was not challenging the elements of the offense. The question today is facially similar, and it involves the same factual analysis, but it is legally distinct. And that question is whether the prosecution proved the elements beyond reasonable doubt. For purposes of the argument, I'd like to focus on the element of justification, because that is an express element of second-degree murder. And because assault with intent to commit murder requires that the killing, if successful, be murder, a killing committed with justification, such as self-defense, is definitionally excluded. Let me interrupt you for just a second here and see if we can get to the heart of this. The people at the bar say that the bar manager said one thing, and no shots were fired. Your guy says that the people at the bar that were trying to restrain him said something else, and they fired him. The jury heard both of those claims. The jury decided they believed the bar's side and not your guy's side, so I don't understand how there could possibly be insufficiency of evidence under these facts, depending on what the jury believed. Sure. So, Judge McKee, I think that one thing that's really important to think about is that the Michigan Court of Appeals omitted from its analysis several critical facts about what happened that night. Namely, that there was a rapid-fire progression of events in the moments before the shooting. So we know that the incident occurred in the early morning hours outside the strip club on Detroit's west side. And it's undisputed that Madison, who was 6'2", 270, grabbed Wooten, who stands 5'8", 180 pounds from behind, hoisted him in the air, and forcibly ejected him from the bar. We know that while Wooten was in Madison's grip, Wooten didn't struggle, and he was quiet. However, Madison was yelling, grab the gun, grab the gun, get ready, you ready? Before Madison released Mr. Wooten, they were clumped up with three others, and a crowd of about 30 was forming around them. The people in the crowd were yelling, we got him, we got him. Complying with Madison's directive to grab the gun, Mr. Thomas did so, and Madison made sure of that before letting Wooten go. And all of these facts are not mentioned in the Court of Appeals opinion. Wooten has a gun. Somebody at the bar has a gun. So even if all of the things that you say had to be accepted as true and should have been discussed by the Court of Appeals, for which I don't know that there's any authority for that, but let's assume that that's true, it comes down to, Wooten says that a shot was fired at him, and he turned around and he fired in self-defense. Everybody else says there was no shot fired. If the jury doesn't believe that there was a shot fired for which he was returning fire, how could there possibly not be sufficient evidence to convict him? Well, Your Honor, I think there is authority to support the idea that Michigan Court of Appeals has an obligation to consider key evidence before evaluating a sufficiency claim. So is this just that the Michigan Court didn't spend enough time dwelling on the facts? Is it just a failure to state something completely? I think it really was insufficient evidence. Well, I think it's both, Your Honor. I think that the Michigan Court of Appeals decision, and I think this Court recognized when it granted the Certificate of Appealability that the conclusion that Wooten's self-defense claim was implausible, which was the decision reached by the Michigan Court of Appeals, indicates that the State Court failed to consider key pieces about that. Well, you know, the point that Judge McCubbin made is whether you consider this in the context you started out with as a claim relating to the State's initial proof of the elements of the case, or whether it's a claim relating to the State's burden once the defendant has raised the self-defense, affirmative defense, correct? Does it make any difference one way or another which way you're analyzing it? That is correct, Your Honor. If I may, I would like to turn to the double jeopardy issue. I'm not sure if you have any additional questions. Thank you. All right, so we're asking the Court to review the double jeopardy claim de novo, and there's a few reasons why I think that's appropriate, and I'm going to focus on two of those here. First, the Michigan Court of Appeals decision rejecting Mr. Wooten's double jeopardy claim was based on an unreasonable factual determination that the prosecutor could not intend to goad a mistrial because the question he posed was proper. Putting aside the issue of whether the prosecutor's question actually did violate the Fifth Amendment, the Michigan Court of Appeals failed to acknowledge that an intent to goad can be based on any misconduct, including the violation of a trial court's order or directive. In this case, the trial judge said, and I quote, it disturbs me that we talked about Fifth Amendment rights earlier in a conference, and I told you that you could not go into this line of questioning. Then at the last minute, you ask this question. Now, the Michigan Court of Appeals decision doesn't even mention the trial judge's instruction or the prosecutor's violation of it, and its failure to evaluate whether the question was improper in light of the trial court's order renders its decision unreasonable. I can understand why you seized upon what the trial, the state trial judge said at that service, right? Lynchman and Jerry. But having said that, if we get to the merits of the question that was actually asked, I don't see why it's even a violation of his right to silence. He wasn't under arrest. And when you put the question that the prosecutor was criticized for asking in the context within which he was asking it, why does that violate, why would that have violated his constitutional rights? Well, Your Honor, I don't think that the question had to violate the constitutional right, had to violate a certain of his constitutional rights in order to come to a point of having an attempt to go, because he did violate the trial court's explicit directive. But I do think that one thing— Is there any authority? We're here to correct constitutional violations. And if the question didn't violate his constitutional rights, I don't think there are any cases that say a violation of a state court order during the trial then violates some of these constitutional rights. So where is the constitutional right violation? Well, Your Honor, I think that Oregon v. Kennedy, which is sort of the main case on this, right? The question that was asked in that case was, you know, did you not do business with this guy? Oh, was that because he's a crook? That question wouldn't have violated any part of the Constitution, at least based on my good understanding of it. So I don't think that there really does need to— I don't think the question needs to violate the Constitution in order to evidence an attempt to go. Well, if the question doesn't violate the Constitution, then the proceeding has to have rendered the trial fundamentally unfair for there to be then a constitutional violation. Would that be a fair statement? I'm not sure. I think the crux of my argument, Your Honor, is that the Double Jeopardy Clause prohibits a prosecutor from goading a mistrial because the Supreme Court said that one purpose of the Double Jeopardy protection is giving the prosecution an unfair opportunity to retry a defendant from using information gained from the first trial concerning the strengths and weaknesses of the state's case. And I think that is what you have here. I think, as you aptly pointed out, the trial judge's ruling here really suggests that the only reasonable reading of the record is that there was an intent to go to enable the prosecution to get a second right at the end. Well, the state trial judge did not make a finding that the prosecutor intended to provoke a mistrial. He made some comments, some of them rather gratuitous and off the point, some of which were expressing displeasure with the prosecutor. But it's key that he made no finding about the prosecutor's intent to provoke a mistrial. Isn't that a significant hurdle for you? I believe it is a hurdle. But I think, given the record, I don't believe it is a significant one. And here's why. Because Kennedy requires that the existence or non-existence of intent be inferred from an objective facts and circumstances. Powell, who authored the concurrence providing the majority of the fifth vote, emphasized that this inquiry is an objective one. And I think that the trial judge's conclusion that the prosecutor lacked intent wasn't supported by the objective facts and circumstances. I think as an initial matter... Well, he didn't make a finding one way or the other. He made some comments, you know, about what had happened. But he really didn't make a finding one way or the other. That's right. And I still think that his... He didn't cite objective facts to buttress his conclusion that the prosecutor lacked intent is, I think, maybe my point. I think that the discussion beforehand where the judge says, why in the world would you ask that question? And when the prosecutor provided the rationale, the judge dismissed it as ludicrous. He said, you know, the prosecution failed to file 404B evidence, said there was no way Newton would be found guilty, and that he would drop it. But if the question was, in fact, constitutionally proper as opposed to improper, then whatever the trial judge's reaction, that goes a pretty long way toward undermining suggestions that the prosecutor had some inappropriate intent, doesn't it? I don't believe so. I think the objective facts and circumstances show that the prosecutor understood that he was losing this case, and that there were many failures on his part in leading up to the case, a failure to file 404B evidence being one of them. And so I think... I think what you're being asked is, if, in fact, the question was proper, and I realize you may disagree with that, but if, in fact, the question was proper, how can we then second-guess the trial court and find that it was for purposes of intentionally creating a misdraft? If it was improper, I get it. Sure. And I think the trial judge really equivocated with respect to his finding that the prosecutor lacked intent. He indicated that he was going to give the prosecutor the benefit of the doubt, and that he would hope and pray that the prosecution did not intend to throw the trial. The trial judge's hopes and prayers and thoughts and opinions on the prosecutor's subjective intent simply are irrelevant under Kennedy. Well, he went on to say, I think that may well have been the situation today, which is, passion got the best of him. And however he phrased it, that is, as before, he was saying what was going on in that courtroom at that time as a factual matter. And at the very least, he said he did not intend to do that in this trial. Correct? That is correct. He did not make that finding, but I think it was unsupported. Thank you. Good morning, Your Honors. On behalf of the Court, Jared Schultz, Assistant Attorney General, on behalf of the Respondent Board. Can you please let us hear your voice? Yeah, absolutely. I'm sorry, Your Honor. These microphones don't seem to be picking up very well, so it probably is necessary to try to project a bit. I will do that. Can you hear us all right? Yes, I can, Your Honors. Your Honors, there are two claims certified in this appeal. The extraordinary remedy of Habeas Corp. The Michigan Court of Appeals addressed both of the petitioner's claims on the merits in its decision, the double jeopardy claim as well as the insufficient evidence claim. Neither of those merits decisions were contrary to or an unreasonable application of various status law, nor were they an unreasonable determination of facts. Now, I will, because we started with Habeas Corp. and I will start with that as well. First, I would like to briefly point out that petitioner is challenging whether the prosecutor disproved an affirmative defense beyond a reasonable doubt. That's not a cognizable claim on Habeas Corp. Now, I understand that there's this distinction about whether the elements of second-degree murder have a without justification element. But if you look at Habeas Corp. they don't treat that self-defense claim as an actual element of the crime. They treat it as an affirmative defense. The case law requires defendants to first it's their burden to produce some evidence of self-defense. And then the burden is placed on the prosecution to disprove that beyond a reasonable doubt. If that were an actual element of the crime that wouldn't be the case. It would be the prosecution's burden from the outset to disprove it beyond a reasonable doubt. So I would say that because of the way it's treated in Michigan case law and I would just point Habeas Corp. briefly people in Greece, 815 Northwest 2nd, 85 that's a 2012 case in the Michigan Supreme Court it just outlines self-defense claims in Michigan and how the burden is first put on defendants in self-defense claims. But regardless of whether this claim is recognizable there's clearly sufficient evidence to that disprove the self-defense claim beyond a reasonable doubt. And I remind this court that Habeas Corp. claims are doubly deferential. We give deference to the trier fact whether any rational trier fact could find guilty beyond a reasonable doubt. We also give deference to the state court to finding there was sufficient evidence. And with that deference in this case it's clear that there was sufficient evidence to prove second degree murder. If you look at again petitioner references the fact that the state court didn't address all of the facts in this case. But first of all again in Habeas Corp. we're looking at the actual decision whether the decision is an unreasonable application of clearly established federal law. There's no requirement that the court actually talk about every little single piece of evidence. But I would also point this court to the Michigan Court of Appeals decision where they did address the fact that there was no that there was a second gun and that the person who had the second gun didn't come forward. But what the Michigan Court of Appeals said was that that's  to consider. We're not going to tell every way the evidence or reassess credibility determinations. And then that's the same standard that we hear that applies to this court. This court can't reweigh that evidence, can't reassess credibility determinations. And here it's clear that the jury believes the prosecution might believe the prosecution witnesses that that Mr. Wooten was causing a disturbance. He made threats in the club beforehand. A couple days or a couple weeks beforehand he threatened Mr. Madison. He threw a drink at him. We've read the record and the fact that Ms. Mazur decided she wanted to spend the ball in retirement sufficiency doesn't mean that you have to completely forget   Wooten         concern  Wooten. I understand your concern Mr. Wooten. I understand your concern Mr. Wooten. I understand your  Mr. Wooten. Whether the State Court unreasonably determined that it was sugar gun plan in the first place doesn't make the initial merits analysis un Anal ly unreasonable whether or not there's an objection, I believe there is a deference in this case for the double jeopardy claim. Now as to the merits of the double jeopardy claim, the prosecution's question to the police officer whether you would have enjoyed talking to the defendant that is not now, it was not then, it really has never been. It had no temporal  right? Well, I believe it did, Your Honor. In the prosecution's questioning before, I can't remember if it was actually on direct examination or if it was redirected, the prosecution was asking questions about, I'm not concerned, he actually said, I'm not concerned with anything that happened after he was arrested. I just want to know about what happened before he was arrested. And I don't know that you can... But that didn't immediately proceed this question? No, it didn't. But again, either way, it's not a violation. There's no case law that says you can't use a defense post-arrest silence as well. There was never... But this wasn't confined to pre-arrest? Correct, Your Honor. There's a case law that says you can use post-arrest silence for substantive evidence of guilt as well. I'm sorry, can you say this again? You can use post-arrest silence as  evidence of guilt as well. It's not just pre-arrest silence. You cannot use post-Miranda silence when the defendant invokes his right to silence. You cannot use that silence as substantive evidence of guilt. That's not what happened. There was never an intervention in this case. So to say that the prosecution's question was not confined, I guess I'm not understanding... I guess I'm not understanding what you're saying. At one point he was arrested, right? Correct, Your Honor. What the prosecution was getting at was whether you say it's pre-arrest or post-arrest, he never came forward with this claim that hey, I acted in self-defense. The issue arises here because if there's not an affirmative defense, one might not expect that the defendant to come forward to discuss his side of the story with the authorities. But if there's an affirmative defense, it might be an inference that the defendant might be drawn from his failure to come forward that wouldn't be able to be drawn in another kind of case. Is that a fair assessment of why you would be asking the question for a lawsuit here? Right. Yes, your Honor. If he's trying to infer that because the defendant didn't come forward, because he took four months and didn't say anything to the police, that's not a reasonable way to act if you're actually acting in self-defense in this case. And, your Honor, regardless of whether this was a question or a violation, again, it was not a violation. I know Petitioner's  that, well, he still intended to cause, the prosecutor still intended to cause a mistrial because he didn't say anything to the defendant. It  misdemeanor and          know that the trial court did not disobey the trial court's order. Well, first of all, we don't know exactly  happened. In my experience, I've found that that happens in quite a number of cases. Why that is the case, I don't know. I certainly believe it should have been taken down. But, regardless... Well, can't we rely on what the judge said? Yes, Your Honor. It's unclear if the question was not permitted by Missouri being ruling. Yes, Your Honor. I guess what I'm trying to make a point is that the prosecutor didn't intend to violate the judge's order. This order occurred before the defense counsel's hearing. I don't know what the judge said about it. I  know what the judge said about the case. I don't know what the judge said about the case. I don't know what   said about the case. I don't know what the judge said about the case. I don't know what the judge said about the case. I don't know the judge's answer. I don't know the judge's answer. I don't know the judge's answer. I don't know the defendant's answer. I don't know the defense. I don't know the police attorney's answer. So I don't know the defendant's answer. I don't know the defendant's answer.  don't  the police       defense's answer. I don't know the defense's answer. So I don't know the defense's answer. I don't know the  answer. I don't know the defense's answer. So I don't know the defense's answer. You've got a point, too, a Supreme Court case that would say that the trial court's determination that the mistrial was granted without prejudice violates clearly established law. So what is the clearly established law other than globally saying Oregon? I think the clearly established law is Oregon versus Kennedy, and I think that the law is that the intent has to be... Is there a case where the facts are similar to this one, where the trial judge did not make a finding that it was, that the prosecutor's intent in asking the plaintiff to   consistent with the court's intent. That's a Florida case. So that doesn't do it for abeast belief. It's got to be contrary to an unreasonable application of clearly established law by the Supreme Court. So other than Oregon, what's your best Supreme Court case? Dennis. Dennis. Dennis. All right, thank you. Thank you. Thank you all your honors. Oh, do you have any other questions? I apologize. I appreciate  from those who feel that they won't consider the case. Thank you, Judge.